******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE AISJAHA N.*

(AC 43680)

DiPentima, C. J., and Moll and Harper, Js.**

*Syllabus*

The respondent mother appealed to this court from the judgment of the
trial court adjudicating her minor child, A, neglected. On appeal, the
mother claimed that the trial court violated her due process rights when
it denied her counsel's oral motion for a continuance of the neglect
trial because the mother was allegedly hospitalized. The mother had
previously been found to be incompetent and was appointed a guardian
ad litem. On the day of trial, the mother failed to appear. Counsel for
the mother moved for a continuance, indicating to the court that she
had been informed by the mother's social worker that she could not
attend because she had been hospitalized and asked that the trial not
proceed without her. The mother's guardian ad litem also objected to
proceeding without her. Counsel for A objected to the continuance and
contended that further delay would not be in the best interest of A. The
court denied the motion and the trial proceeded without the mother. A
was adjudicated neglected and committed to the custody of the peti-
tioner, the Commissioner of Children and Families. *Held* that the respon-
dent mother's due process rights were not violated by the trial court's
denial of her motion for a continuance of the neglect trial; this court,
considering the three-pronged test set forth in *Mathews* v. *Eldridge* (424
U.S. 319), determined that the mother failed to present any authority
for her proposition that a neglect proceeding necessarily implicates
the fundamental right to parent one's child, and her reliance on cases
involving the termination of parental rights was misplaced because ter-
mination proceedings differ vastly from neglect proceedings, as a peti-
tion for neglect does not seek the permanent and irrevocable ending of
parental rights, the mother had both an attorney and a guardian ad litem
present to advocate on her behalf and, thus, the probable value of a
continuance was lessened, and the government's interest in ensuring
the health and safety of A was significant, an interest that would have
been substantially impacted by further delaying the resolution of A's
custodial placement, particularly in light of the fact that at the time of
the trial, A was been under a temporary order of custody for almost
one year.

Argued May 18—officially released August 3, 2020***

*Procedural History*

Petition by the Commissioner of Children and Fami-
lies to adjudicate the respondents' minor child
neglected, brought to the Superior Court in the judicial
district of Waterbury, Juvenile Matters, and tried to the
court, *Hon. John Turner*, judge trial referee; judgment
adjudicating the minor child neglected and ordering
commitment to the custody of the Commissioner of
Children and Families, from which the respondent
mother appealed to this court. *Affirmed.*

*Benjamin M. Wattenmaker*, assigned counsel, for the
appellant (respondent mother).

*Stephen G. Vitelli*, assistant attorney general, with
whom were *Benjamin Zivyon*, assistant attorney gen-
eral, and, on the brief, *William Tong*, attorney general,
for the appellee (petitioner).

*Opinion*

DiPENTIMA, C. J. The sole issue in this appeal is whether the court, *Hon. John Turne*r, judge trial referee, erroneously denied the respondent mother's motion for a continuance during a trial in which her daughter, Aisjaha N. (child), was adjudicated neglected. The oral motion, made by counsel for the respondent mother at the start of the hearing, was based on her alleged emergency hospitalization at the time of the hearing. The court denied the motion and the neglect hearing proceeded without the respondent mother present. The court found that the child was neglected and committed her to the care of the petitioner, the Commissioner of Children and Families. This appeal followed. In her appeal, the respondent mother argues that the trial court violated her due process rights under the fifth amendment to the United States constitution by denying her motion for a continuance of the petitioner's neglect petition. The petitioner argues that the court properly denied her motion for a continuance and that the respondent mother's due process rights were not implicated. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The petitioner filed a petition for neglect on November 25, 2018, alleging that the child had been abandoned, had been denied proper care and attention and was living under conditions injurious to her well-being. The respondent mother was served with an order for temporary custody, petition, summons, notice and an order to appear on December 7, 2018, and January 9, 2019. She appeared on December 7, 2018, and entered a plea of denial. The case was continued until January 23, 2019, for a case status conference and for the respondent mother to undergo a competency examination. The respondent mother failed to attend the hearing and the trial was continued to February 20, 2019, when the respondent mother again failed to appear. On March 14, 2019, after a competency hearing, the respondent mother was found to be incompetent and proceedings were stayed for sixty days to allow the respondent mother to be restored to competency. On May 29, 2019, the court found that the respondent mother had not been restored to competency and appointed a guardian ad litem for her. The case then was continued to July 16, 2019, for a case status conference at which a trial on the neglect petition was scheduled for October 28, 2019.

The respondent mother failed to appear for the October 28, 2019 trial. At trial, counsel for the respondent mother reported that the respondent mother would not be present because she was hospitalized. Counsel stated: "I received word from [the social worker for the respondent mother] last week that she—although she had no verification because she didn't have a release that she was told by the maternal grandmother that my

client had been admitted to the hospital. This weekend I actually did receive a voice mail from my client stating that she was admitted to the hospital and would not be at today's court date. She was anticipating that she would be released tomorrow, however, I'm not so sure that that will actually happen. I do not have a release. I just found out where she was and they're not going to talk to me at the hospital. We're hoping that perhaps the guardian ad litem will be able to . . . verify information with— by presenting papers to them that she's been appointed as . . . the guardian ad litem." Following a discussion between the attorneys and the court about the role of the guardian ad litem, the court asked if the parties were ready to proceed. Counsel for the respondent mother objected: "We are not [ready], Your Honor . . . [b]ecause my client is not present. She's not competent. She can't be defaulted and she's admitted to the hospital. . . . And she also left me a voice mail requesting that because she can't be present that we not proceed without her and that we continue the matter. So I cannot agree to proceed in her absence." The court stated: "Your client is not being defaulted. Your client is incompetent and because she is incompetent a guardian ad litem was appointed because she was unable to understand the nature of the proceedings and to assist her counsel in her defense. That's the reason that we have [the] guardian ad litem."

The guardian ad litem for the respondent mother also opposed proceeding: "I also object to the matter proceeding because although she is not competent to assist her counsel, that does not mean she is not competent to assist me as her guardian ad litem and, in fact, I believe it is required of me as guardian ad litem to first attempt to . . . explain proceedings in a manner that she can understand. She has the right to be present during her trial and it is also incumbent upon me as her guardian ad litem to request such accommodations as are necessary to best serve . . . my ward given her limitations." The attorney for the minor child stated that further delaying the proceedings would not be in the best interest of the child. After a brief recess, the hearing began with counsel for the respondent mother renewing her objection to the trial proceeding: "Your Honor, at this time I . . . would like to renew my objection to proceeding in my client's absence given that she is incompetent. The guardian ad litem is supposed to explain the process as it goes . . . along in a manner she can understand. She can't do that without her being present and my client did leave me a voice mail saying that she was involuntarily hospitalized and that she wanted this matter continued."

The court then stated: "I'll point out that mother underwent a competency evaluation. It was determined that she is incompetent and in need of a guardian ad litem. She was determined to be incompetent because she was unable to understand the nature of the proceed-

ings and to assist her lawyer with regard to her defense, and that [the guardian ad litem] was appointed . . . in May of 2019 and [the guardian ad litem] filed her appearance as [guardian ad litem] for mother shortly thereafter, and I understand it's been orally represented without any documentation or other corroboration that mother is not present today because she is undergoing treatment in a facility . . . ."

During the trial, the child's maternal grandmother testified that her daughter, the respondent mother, was hospitalized at the time of trial at Saint Raphael's Hospital. She testified that she knew that because she went to visit her there during the week before trial. The child's grandmother brought forms completed by the respondent mother's physician that the grandmother planned to submit to the Probate Court in order to seek conservatorship. These forms, admitted into evidence during the hearing, however, did not indicate that the respondent mother was hospitalized the morning of trial.

In the court's memorandum of decision finding the petitioner had proved the allegations of neglect as to the child, the court set forth the explanation for the respondent mother's failure to appear provided by her counsel. "Counsel for [the respondent mother] reported that she believed [respondent mother] was not present because [she] was in a hospital. Reportedly, her client's mother (maternal grandmother) had been told a week prior to the trial (by someone not identified) that [respondent mother] had been admitted to the hospital. Counsel's representation that [respondent mother] had been admitted to the hospital was based on a message from a social worker stating she'd been told by the maternal grandmother that her client had been admitted to the hospital. The social worker further stated to . . . counsel she'd been unable to verify the information. Counsel's representation that [her client] had been admitted to the hospital and could not attend the trial was further based on a voice mail message from an unidentified person (whom counsel believed to be [her client]), that she 'was admitted to the hospital and would not be at today's court date.' Counsel stated because she had no release, no verification or other corroboration to offer the court, she was unable to confirm that [respondent mother] was in fact in the hospital. Counsel was without knowledge or reliable information regarding [her client's] purported admission to a hospital or whether [she] had been discharged from the hospital and was unable to come to court following her discharge. Given the above, the court ordered the parties to proceed with the trial." The court further noted that the "request for a continuance was predicated upon counsel's unsubstantiated and uncorroborated hearsay twice removed. If true, [the respondent] mother had been hospitalized for about one week thus, there had been adequate time to obtain some

written corroboration of [the respondent] mother's hospitalization and moreover, a written motion for a continuance of the trial should have been filed. Neither occurred. The court regarded counsel's statement of what was reported to her via a voice mail message from an unidentified person, to be untrustworthy and unreliable. The court declined to rely on it and attached no weight or credibility to it. Counsel's objection to proceeding with the trial was overruled and her request for a continuance was denied." The court also noted that, following the objection, the attorney for the minor child "immediately requested the court to proceed with the trial citing her client has been under an order of temporary custody for a long time and averring that further delay was not in the child's best interest." The court found that the child was in a state of neglect. The court determined that it was in the best interest of the child that she be placed in the custody of the petitioner. This appeal followed.

We first address the standard of review. The petitioner and the respondent mother differ on the applicable standard of review that should guide our review of the respondent mother's claim. The respondent mother argues that our review is plenary because her due process rights were implicated in the court's denial of her continuance. In support of her argument that plenary review should apply, the respondent mother emphasizes that the right to parent a child is a fundamental one and discusses the procedural protections that are offered during a hearing on the termination of parental rights. A motion for a continuance that is denied, if it implicates a fundamental right, can prompt plenary review to determine if it constituted a denial of procedural due process. See *In re Shaquanna M.*, 61 Conn. App. 592, 602, 767 A.2d 155 (2001) (reviewing denial of motion for continuance during petition for termination of parental rights). Here, however, the motion for a continuance was denied during a trial on a petition for neglect, not a petition for the termination of parental rights, as in *In re Shaquanna M.*

Conversely, the petitioner argues that, because the respondent mother's due process rights were not affected, the applicable standard of review is abuse of discretion. Further, the petitioner emphasizes that we generally review a denial of a motion for a continuance for an abuse of discretion. See *State* v. *Beckenbach*, 198 Conn. 43, 47, 501 A.2d 752 (1985).

To determine which standard of review is applicable, we turn to *In re Shaquanna M.*, supra, 61 Conn. App. 594. In that case, the respondent claimed that she was denied her procedural due process rights when the trial court denied her motion for a continuance during a termination of parental rights trial. Id. This court framed the issue as "whether a continuance was necessary to ensure the respondent's right to due process." Id., 600.

In addressing the respondent's claim, this court began its analysis with the following: "Whether the denial of a continuance has been shown by the respondent to have interfered with her basic constitutional right to raise her children, thereby depriving her of procedural due process, is the issue of this case. Its resolution is a question of law for which our review is plenary. . . . The abuse of discretion standard does not apply to constitutional . . . claims, which are reviewed de novo by the courts." (Internal quotation marks omitted.) Id.

Although, in the present case, the respondent's motion for a continuance was denied in a neglect proceeding, and not a termination of parental rights proceeding, the respondent's claim and arguments in support thereof are similar to those presented in *In re Shaquanna M.*—that the denial of the motion for a continuance interfered with her fundamental right. Therefore, in accordance with *In re Shaquanna M.*, we exercise plenary review and, accordingly, we conclude that the trial court did not err in denying the respondent mother's motion for a continuance and proceeding to trial on the neglect petition.[1]

A denial of procedural due process triggers analysis under the three-pronged test developed in *Mathews* v. *Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). This test balances three competing interests: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [g]overnment's interest, including the function involved and the fiscal and the administrative burdens that the additional or substitute procedural requirements would entail." Id., 335.

As to the first prong, the respondent mother argues that the interest involved here is her fundamental right to parent her child. She contends that the petitioner's neglect petition, which sought to place her child in the custody of the petitioner, infringed on that constitutional right. In support of this position, the respondent mother cites to cases involving the termination of parental rights. See *In re Matthew P.*, 153 Conn. App. 667, 102 A.3d 1127, cert. denied, 315 Conn. 902, 104 A.3d 106 (2014); *In re Shaquanna M.*, supra, 61 Conn. App. 592. At issue here, however, is a petition for neglect. General Statutes § 46b-129 (b) provides in relevant part that a child may be found neglected if "there is reasonable cause to believe that (1) the child or youth is suffering from serious physical illness or serious physical injury or is in immediate physical danger from the child's or youth's surroundings, and (2) as a result of said conditions, the child's or youth's safety is endangered and immediate removal from such surroundings is necessary to ensure the child's or youth's safety

. . . ." The court then either holds a hearing with the parents or caretaker of the child to determine whether the court should vest the child's *temporary* care and custody in another person or suitable agency, or issues an ex parte order vesting the child's *temporary* care in another person or agency. See General Statutes § 46b-129 (b). Following the hearing, the court shall issue "specific steps the commissioner and the parent or guardian shall take for the parent or guardian to regain or to retain custody of the child or youth . . . ." General Statutes § 46b-129 (c) (6).

The respondent mother argues that the neglect proceeding is an infringement on her fundamental right to parent her child. She cites no authority for the proposition that a neglect proceeding necessarily implicates that right. Moreover, the right to parent a child is not limitless. See *Roth* v. *Weston*, 259 Conn. 202, 224, 789 A.2d 431 (2002). In fact, the state has the responsibility to act in order to protect the health and safety of children. Id. Indeed, "it is unquestionable that in the face of allegations that parents are unfit, the state may intrude upon a family's integrity.§ Id.; see also General Statutes §§ 17a-112 (j) and 45a-717.

The respondent mother's argument also overlooks the fact that a neglect petition initiates a proceeding that has a distinctly different goal from that of a termination of parental rights proceeding. A petition for neglect does not seek the permanent and irrevocable ending of the parental rights that is central to the termination proceeding. See, e.g., *In re Jermaine S.*, 86 Conn. App. 819, 828 n.7, 863 A.2d 720, cert. denied, 273 Conn. 938, 875 A.2d 43 (2005). Indeed, one of the goals of a neglect proceeding is the development of specific steps that will allow the parent to regain custody of his or her child. Accordingly, the respondent mother's reliance on termination of parental rights cases is misplaced.

The second prong of *Mathews* addresses the risk of an erroneous deprivation and the probable value of additional or substitute procedural safeguards. See *Mathews* v. *Eldridge*, supra, 424 U.S. 335. The respondent mother contends that granting her motion for a continuance was an additional procedure that would have substantial value. She argues further that the presence of the guardian ad litem and attorney were not enough to protect the respondent mother from wrongful deprivation. The petitioner maintains that granting the continuance would not have added significant value because the respondent mother's interests were protected sufficiently by her attorney and the guardian ad litem who was assigned to represent the respondent mother's interests.

It is well established that "each party to a litigation has the undoubted right to be present at the trial." *Anderson* v. *Snyder*, 91 Conn. 404, 408, 99 A. 1032 (1917). This right, however, is not absolute. If a litigant

does not appear or is voluntarily absent from court, the court is not required to halt proceedings until that person can attend. See *Automotive Twins, Inc.* v. *Klein*, 138 Conn. 28, 35, 82 A.2d 146 (1951).

The guardian ad litem supported the respondent mother's motion for continuance and told the court that, "although [the respondent mother] is not competent to assist her counsel, that does not mean she is not competent to assist me as her guardian ad litem and, in fact, I believe it is required of me as guardian ad litem to first attempt to . . .explain proceedings in a matter that she can understand. She has the right to be present during her trial and it is incumbent upon me as her guardian ad litem to request such accommodations as are necessary to best serve . . . my ward given her limitations."

The court denied the motion for a continuance and stated: "Your client is not being defaulted. Your client is incompetent and because she is incompetent a guardian ad litem was appointed because she was unable to understand the nature of the proceedings and to assist her counsel in her defense."

The record reveals that the respondent mother's attorney and her guardian ad litem advocated zealously on her behalf throughout the trial. Further, the court did not default the respondent mother for not attending the hearing. Although the guardian ad litem does not replace the respondent mother at trial, the potential value of a continuance was lessened by the presence of the guardian ad litem and the previous finding that the respondent mother was incompetent. Significantly, in response to the request for the continuance, the attorney for the minor child stated: "Your Honor, I ask that the trial proceed. . . . [T]his child has been under an order of temporary custody for quite a long time. Mother is incompetent to participate in any proceedings at any rate. I just think that further delay is not in the best interest of the child." In addition, as noted by the trial court, if the respondent mother had been hospitalized since the prior week, "there had been adequate time to obtain some written corroboration of [her] hospitalization and moreover, a written motion for a continuance of the trial should have been filed."

The final prong to be considered is the government's interest, including the financial and administrative burdens of additional procedures. See *Mathews* v. *Eldridge*, supra, 424 U.S. 335. The government's interest here, ensuring the health and safety of the child, is significant. Granting the continuance likely would have placed a substantial burden on this governmental interest, particularly, as noted by the attorney for the minor child, in light of the prior repeated delays in this case, mostly as a result of the respondent mother's failure to appear. As discussed previously in this opinion, the petitioner invoked a ninety-six hour hold on November

25, 2018, and then moved for an order of temporary custody and a neglect petition on November 28, 2018. The respondent mother appeared on the first court date on December 7, 2018, but failed to appear on January 23 and February 20, 2019, for subsequent hearings. At the time of the trial on October 28, 2019, the child had been under an order of temporary custody for almost one year. As discussed previously in this opinion, at trial, the attorney for the minor child noted that the child had been under the order of temporary custody for a lengthy period of time and argued that further delay was not in the best interest of the child.

Although the financial and administrative burdens of continuing the hearing may not have been significant, the delay in resolving the child's custodial placement would have substantially impacted the government's interest in resolving the child's custodial determination swiftly and ensuring the care and safety of the child.

We note the importance of individuals, especially parents in child custody proceedings, being able to attend hearings in which their fundamental rights are at issue. This, however, is not such a case. Accordingly, our consideration of the *Mathews* factors leads us to conclude that the respondent mother's procedural due process rights were not violated by the court's denial of her motion for a continuance of the neglect proceeding.[2]

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** The listing of judges reflects their seniority status on this court as of the date of oral argument.

*** August 3, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] This claim was preserved, and thus we need not consider the *Golding* factors as presented in the respondent mother's brief. See *State* v. *Golding*, 213 Conn, 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).

[2] We also note that the court did not default the respondent mother for not attending the hearing and, therefore, the petitioner was put to her proof on the allegations of the petition.